UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLAYTON FOSTER TUCKER,

                    Petitioner,

vs.                                              Case No. 3:19-cv-804-BJD-JBT

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.

_____

## **ORDER**

## I.  **STATUS**

The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a

Person in State Custody (Petition) (Doc. 1) challenges a 2013 state court

(Putnam County) conviction for three counts of sexual battery.   Respondents

filed a Response to Petition (Response) (Doc. 8) and an Appendix (Doc. 9).[1]

---

[1] Respondents filed an Appendix (Doc. 9).  The Court hereinafter refers to the exhibits as
"Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp
numbers at the bottom of each page of the Appendix.  Otherwise, the page number on the
particular document will be referenced.  For Ex. W, the page numbers referenced in this
opinion are the stamp numbers at the top, left-hand corner of each page of the Appendix.
The Court references the docket and page numbers assigned by the electronic filing system
for the Petition, Response and Reply.

Petitioner filed a Response to Respondents' Answer (Reply) (Doc. 10).  See Order (Doc. 4).

Petitioner raises six grounds claiming ineffective assistance of trial counsel.  Respondents concede the Petition is timely filed.  Response at 6. No evidentiary proceedings are required in this Court.[2]  The pertinent facts are fully developed in the record, or the record otherwise precludes habeas relief; therefore, the Court can adequately assess the claims without any further factual development.  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## II.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir.) (quoting 28 U.S.C. § 2254), cert. denied, 142 S. Ct. 599 (2021). For issues previously decided by a state court on the merits, this Court must review the underlying state-court decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In doing so, a federal district

---

2 The state court conducted an evidentiary hearing on all of the grounds presented herein, except ground six, which was summarily denied by the state court.  Ex. W at 230-326. Petitioner retained counsel (Sheppard, White, Kachergus & DeMaggio, P.A.) to represent him in the post-conviction proceeding.  Id. at 148-499, 153-54.

court must employ a very deferential framework.  Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 141 S. Ct. 2469 (2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), cert. denied, 142 S. Ct. 441 (2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court

3

precedents "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413, 120 S. Ct. 1495.

<u>Lee</u>, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions where the state court's determinations are unreasonable, that is, if no fairminded jurist could agree with them.   <u>McKiver</u>, 991 F.3d at 1364.

This is a high hurdle, not easily surmounted.   If the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'"   <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)).   Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary."   <u>Sealey</u>, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)).   <u>See</u> <u>Hayes v. Sec'y, Fla. Dep't of Corr.</u>, 10 F.4th 1203, 1220 (11th Cir. 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal requirement, applicable to all federal habeas proceedings of state prisoners, set forth in 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact.

Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), cert. denied, 142 S. Ct. 124 (2021). As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding. Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035,

1038 (11th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 2471 (2021).   Pursuant to this standard, "a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.   <u>Strickland</u>, <u>v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).   We need not address both prongs if a petitioner makes an insufficient showing on one prong.   <u>Id</u>. at 697, 104 S. Ct. 2052."   <u>Fifield v. Sec'y, Dep't of Corr.</u>, 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam), <u>cert. denied</u>, 142 S. Ct. 788 (2022).

To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"   <u>Raheem v. GDCP Warden</u>, 995 F.3d 895, 908 (11th Cir. 2021) (quoting <u>Strickland</u>, 466 U.S. at 687), <u>petition for cert. filed</u>, (U.S. Nov. 23, 2021).   Additionally,

> because "[t]he standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.   <u>Harrington [v. Richter</u>, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).   Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard."   <u>Id</u>.

<u>Tuomi v. Sec'y, Fla. Dep't of Corr.</u>, 980 F.3d 787, 795 (11th Cir. 2020), <u>cert.</u>
<u>denied</u>, 141 S. Ct. 1721 (2021).

## IV.   GROUND ONE

The first ground of the Petition is: "Counsel was constitutionally
ineffective in failing to call witnesses causing Defendant prejudice."   Petition
at 5.   In this ground, Petitioner raises a Sixth Amendment claim asserting he
received ineffective assistance of trial counsel for failure to call two witnesses:
Susan Goree, R.N., and Daniel Escalada.   <u>Id</u>.   Upon review, Petitioner raised
a comparable claim in his motion for post-conviction relief as ground one.   Ex.
W at 17-19.   The circuit court conducted an evidentiary hearing on this
ground.   <u>Id</u>. at 230-326.

Applying the <u>Strickland</u> standard, the circuit court denied this claim of
ineffective assistance of trial counsel.   Ex. W at 17-19.   Petitioner appealed
the denial of post-conviction relief and the 5th DCA, after oral argument,
affirmed per curiam.   Ex. W at 223; Ex. X; Ex. Y; Ex. Z; Ex. AA; Ex. BB; Ex.
CC.   The mandate issued on March 8, 2019.   Ex. DD.

In pertinent part, the record demonstrates the following transpired.
The state listed both Ms. Goree and Mr. Escalada as Category A witnesses.
Ex. A at 81, 97.   Defense counsel, Kevin R. Monahan, did not mention these
two individuals in Defendant's Disclosure.   <u>Id</u>. at 112-13.   However, for

7

Defendant's Witness List, counsel included Susan Goree and "all [witnesses] listed by state." Id. at 280-81.

At the state court evidentiary hearing, Ms. Goree attested she was subpoenaed for trial, was present in the state courthouse and available to testify; however, she was not called to testify. Ex. W at 249. She stated her deposition was never taken and when asked if she ever spoke "with Mr. Tucker's counsel that he had before trial[,]" she responded no.[3] Id. at 249-50.

Mr. Monahan, defense counsel, also took the stand at the evidentiary hearing. Id. at 268. He attested he is an experienced criminal defense attorney, having practiced since 1983 and having done a hundred criminal trials. Id. at 268-69. He said, for Petitioner's case, he reviewed the reports, the investigation, and discovery materials. Id. at 269. He also testified he preferred to undertake his own investigations, tending to conduct interviews rather than depositions. Id. at 270. In particular, he testified he spoke with Ms. Goree, although she apparently did not recall the conversation. Id. at 271. Indeed, Mr. Monahan said he was struck by one of Ms. Goree's comments

---

3 The record demonstrates public defenders, Ronald Clark, and regional conflict counsel represented Petitioner until the court appointed Kevin Monahan on August 8, 2012. Ex. A at 74-75.

concerning the delay in conducting an evaluation after the first report of abuse. Id. at 271-72.

Upon inquiry, Mr. Monahan explained that Ms. Goree was not going to fit into his trial strategy as she found no evidence of a conclusive nature concerning abuse.  Id. at 274.  Also, counsel noted, the defense strategy did not include a claim that the victim was celibate, so the examination was not a focus of the defense.  Id.

Although subpoenaed for the evidentiary hearing, Mr. Escalada, the lab analyst/forensic technologist in the biology section of the Florida Department of Law Enforcement (FDLE), did not attend the hearing.  Id. at 251-52.  He reported no DNA was found on buccal swabs, vaginal swabs, cervical swabs, labial swabs, anal swabs, underwear, and posterior fourchette swabs.  Id. at 251.  The court received the report into evidence as Defendant's Exhibit 4. Id. at 252.  Mr. Monahan testified, for the same reasons he did not call Ms. Goree, he decided not to call the analyst.  Id. at 280.  In closing, the state argued that Mr. Monahan's "tactic and strategy for not calling Ms. Goree, not calling the DNA analyst because that wasn't going to do anything for his theory of the case."  Id. at 311.

The record shows counsel based his trial strategy on the information he gathered through his own investigation and by reviewing reports, the

9

investigation of the claim of abuse, and discovery materials.   Mr. Monahan

concluded that the calling of these two witnesses did not fit his trial strategy;

"[s]trategic decisions do not constitute ineffective assistance of counsel if

alternative courses have been considered and rejected and counsel's decision

was reasonable under the norms of professional conduct."   <u>Murray v. Sec'y,

Dep't of Corr.</u>, No. 8:09-CV-1822-T-27TBM, 2012 WL 4482189, at *20 (M.D.

Fla. Sept. 26, 2012) (not reported in F.Supp.2d) (quoting <u>Occhicone v. State</u>,

768 So. 2d 1037, 1048 (Fla.2000)).   Furthermore, "which witnesses, if any, to

call, and when to call them, is the epitome of a strategic decision, and it is one

that we will seldom, if ever, second guess."   <u>Waters v. Thomas</u>, 46 F.3d 1506,

1512 (11th Cir.), <u>cert. denied</u>, 516 U.S. 856 (1995).

Applying the two-pronged <u>Strickland</u> standard, the circuit court denied

this ground.   The court held:

> At the evidentiary hearing, Trial Counsel
> testified that he did not depose Goree but he did call
> and interview her.   Trial Counsel testified that he
> didn't believe the testimony of Goree would be helpful
> as the exam occurred three days after the alleged
> incident and any evidence could be expected to be
> gone.   Goree reiterated this in her testimony at the
> hearing.   Trial Counsel was not trying to prove the
> victim was "virginal" as much as he was attempting to
> prove the victim was sexually active and blaming the
> Defendant to cover up the consensual sex she was
> having with the boy on the phone.   At trial, the
> Defendant testified to hearing this conversation on the

10

> phone and later reprimanding her about it.   The
> Court agrees that Trial Counsel's decision not to call
> Susan Goree or Danial Escalada was a strategic
> decision and other [sic] the circumstances, a
> reasonable one.   Neither prong of <u>Strickland</u> has been
> met here.   **Ground one is denied.**

Ex. W at 194-95.[4]

In denying post-conviction relief, the circuit court properly applied the

two-pronged <u>Strickland</u> standard of review.   Thus, Petitioner cannot satisfy

the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected these

claims based on <u>Strickland</u>.   Further, Petitioner has not shown the state court

unreasonably applied <u>Strickland</u> or unreasonably determined the facts.

Indeed, upon review, the state court was objectively reasonable in its

<u>Strickland</u> inquiry and in concluding defense counsel's strategic decisions were

reasonable under the norms of professional conduct.   Without satisfying the

performance and prejudice prongs as set forth in <u>Strickland</u>, Petitioner cannot

prevail on his claim of ineffective assistance of counsel.   Furthermore, the 5th

DCA affirmed.   Ex. CC.

---

4 This Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."   <u>Consalvo v. Sec'y for Dep't of Corr.</u>, 664 F.3d 842, 845 (11th Cir. 2011) (per curiam) (internal quotation marks omitted) (quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)), <u>cert. denied</u>, 568 U.S. 849 (2012).   Since the state court observed Mr. Monahan's testimony and apparently found it more credible, this Court will not make any redetermination of credibility.

Petitioner has failed to demonstrate there was a breakdown in the adversary process that rendered the result unreliable by counsel's failure to put Ms. Goree and Mr. Escalada on the stand at trial.   Although Mr. Monahan could have done more or different things, his performance was not deficient. In <u>Kuhns v. Sec'y Dep't of Corr.</u>, No. 2:08-CV-163, 2011 WL 1085013, at *6 (M.D. Fla. Mar. 21, 2011) (not reported in F.Supp.2d), this Court recognized:

> "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir.2000) (quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987)). In finding prejudice, the court must determine that the result of the proceedings would have been different considering "the totality of the evidence before the judge or jury." <u>Berghuis v. Thompkins</u>, —— U.S. ——, 130 S. Ct. 2250, 2265, 176 L.Ed.2d 1098 (2010) (quoting <u>Strickland</u>, 466 U.S. at 695).

Petitioner has not demonstrated that failure to call these two witnesses was deficient or that, even if deficient, that he suffered prejudice as a result. <u>Duran v. Walker</u>, 223 F. App'x 865, 875 (11th Cir.) (per curiam), <u>cert. denied</u>, 552 U.S. 874 (2007).   In short, Petitioner has failed to show "a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have

provided." <u>Moore v. Sec'y of Fla. Dep't of Corr.</u>, No. 3:07-cv-117-J-34MCR, 2010 WL 1257688, at *8 (M.D. Fla. March 30, 2010) (not reported in F.Supp.2d). Thus, Mr. Monahan's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial.

The 5th DCA's decision, although unexplained, is entitled to AEDPA deference. Ex. CC. Applying the look through presumption described in <u>Wilson</u>, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. In sum, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective. Thus, Petitioner has failed to demonstrate a Sixth Amendment violation under the United States Constitution. As such, Petitioner is not entitled to habeas relief on ground one.

## V. GROUNDS TWO AND THREE

In ground two of the Petition, Petitioner contends his counsel was ineffective for failure to object to surplusage in the information and for not

13

requesting a special jury instruction on an essential element of familial or custodial authority. Petition at 7. In his third ground, Petitioner alleges his counsel performed deficiently in failing to object or in failing to subject the state's case to adversarial testing on the essential element of familial or custodial authority. Id. at 8.

Of import, regarding these two claims, the record shows defense counsel filed a Motion to Suppress Petitioner's statement to the Putnam County Sheriff's Office investigators. Ex. A at 109-10. The trial court denied the motion. Id. at 269-73. Therefore, based on the trial court's ruling, Petitioner's statement could be used for impeachment purposes at trial, and it was. Ex. B at 293-96.

Petitioner's statement to the police is replete with information confirming and supporting a conclusion there was a custodial relationship. Ex. A at 116-268. Petitioner told the detective the victim is his wife's cousin's daughter, the second cousin of his own daughter. Id. at 133. Petitioner succinctly described his relationship with the victim: "to me she is like stepdaughter, or foster daughter." Id. Petitioner noted that the victim "spent so much time at our house." Id. He described occasions where he scolded or admonished the victim for inappropriate behavior. Id. at 143-146.

14

Throughout his statement, Petitioner describes himself as the victim's foster father, stepfather, or uncle who cares for and loves the victim, feeds her, clothes her, and gives her shelter and a place to sleep and play.   Id. at 184-85, 188.   Petitioner said the victim expected him to be a father figure to her.   Id. at 223.   Petitioner mentioned buying the victim necklaces, trinkets, and fast food.   Id.   Petitioner ultimately described his feelings towards the victim as being like a father, foster father, "parent kind of thing" who gets the victim whatever she needs.   Id. at 255.

It was certainly not surprising under these circumstances that defense counsel considered the custodial relationship "as a given."   Ex. W at 275. Counsel noted that the victim spent many nights at the Defendant's household, and the victim accompanied the family on activities and a number of other things.   Id.   Mr. Monahan described the victim as "almost a family member."[5] Id. at 276.   Additionally, counsel said he talked a lot with Petitioner about his relationship with the victim.   Id.

Mr. Monahan was aware of the content of Petitioner's statement to the police, and Mr. Monahan personally discussed with Petitioner his relationship

---

5  Notably, at trial, Petitioner described himself as a father figure to the victim and a friend. Ex. B at 296.

with the victim.   In addition, Mr. Monahan deposed the victim.[6]  Ex. A at 360-416.   The victim said she spent the night at Petitioner's house a couple of times per week and kept clothes at the house.   Id. at 370.   The victim described Petitioner as being in the house after school but working nights.   Id. at 370-71.   The victim used the household's computers and Petitioner's smart phone.   Id. at 371-72, 374.   The victim described sleeping with her cousin on the couch, in her cousin's room, and sometimes in Petitioner and his wife's bed in a separate bedroom.   Id. at 379-80.

The circuit court, after the evidentiary hearing, denied grounds two and three, finding neither prong of Strickland met.   Ex. W at 195-96.   The court found counsel's strategy and representation reasonable under the circumstances presented.   Id. at 196.   The court distinguished a state case concerning a seventeen-year-old victim, with no close personal relationship/authority and no recognizable bond of trust, from Petitioner's case, a case in which Petitioner confronted the child victim about talking to boys and routinely staying at Petitioner's house.   Id. at 195.   The court

---

6  Of import, the state took the deposition of Peter Kinosis, who lived in Petitioner's dwelling, and Mr. Kinosis said the victim was in Petitioner's house for almost a full school year and all of the summer, staying two or three weeks at a time, and then going home for a week.   Ex. A at 420-21.   In the victim's own statement to the CPT, the victim said she would spend up to three weeks at a time at Petitioner's house.   Id. at 308.

specifically noted how Petitioner would send the victim Facebook messages and reprimand her concerning her relationship with boys.   Id. at 196.

Upon review, the state court made its findings, applied the Strickland standard of review, and denied relief.   The court appropriately applied the Strickland standard.   It did not unreasonably determine the facts.   The court found trial counsel performed within the bounds of reasonable competent counsel.   The court also found Petitioner did not meet the prejudice prong of Strickland.   The state court's ruling was not contrary to and did not involve an unreasonable application of clearly established federal law.

Petitioner has failed to satisfy the two-pronged Strickland standard of review and is not entitled to relief on these claims.   The 5th DCA's decision, although unexplained, is entitled to AEDPA deference.   Ex. CC.   Applying the look through presumption described in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   In brief, the state court's adjudication of these claims is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   Therefore, grounds two and three are due to be denied.

## VI.   GROUND FOUR

In his fourth ground, Petitioner raises a claim of ineffective assistance of counsel for failure to prepare Petitioner to testify and to be cross-examined by the state.   Petition at 10.   Petitioner asserts his counsel may have discussed trial strategy with Petitioner, but counsel failed to prepare Petitioner to testify. Id.   Petitioner notes that he does numerous impersonations, but only one impersonation was described in denying the claim on post-conviction motion. Id.

Once again, it is important to note that the state was armed with Petitioner's statement to the investigator.   In that statement, Petitioner told the investigator he does "imitations" or "impersonations" a lot.   Ex. A at 150. He talked about Dirty the cat climbing on the table.   Id.   He described impersonating a "dirty old man" and a "gay man."   Id. at 151.

When testifying at the evidentiary hearing, Petitioner said that in September of 2011, he had watched the DVD of his statement several times.[7] Ex. W at 259-60.   He was also given the opportunity to review a transcript of his statement during a lengthy lunch break during trial.[8]   Id. at 32-33.

---

[7] Petitioner viewed the DVD several times prior to Mr. Monahan's representation of Petitioner.

[8] The record shows the lunch recess lasted from 11:26 a.m. to 1:15 p.m., although a very brief court proceeding occurred prior to Petitioner and counsels' break.   Ex. B at 142-48.

18

At the evidentiary hearing, Mr. Monahan testified he did discuss Petitioner's testimony with him.   Id. at 49.   Mr. Monahan said he was particularly concerned about Petitioner being prepared for cross examination and providing an explanation for why the victim would make the allegations against Petitioner.   Id. at 50.   In closing, the state argued that Mr. Monahan prepped Petitioner for trial and explained the trial strategy.   Id. at 86.

At trial, the prosecutor inquired: "[y]ou also used to do some imitations around the house; right?"   Ex. B at 306.   Petitioner said he would do an old man with an Australian accent.   Id.   The state then asked Petitioner about one imitation in particular: a dirty old man.   Id. at 307.   Petitioner responded, yes, he would do that imitation for his daughter and the victim, but not to the victim directly.   Id.   The prosecutor read from Petitioner's previous statement:

> Line 10, "Then I'd be the dirty old man, you know.   I'd pull my shirt – pants way up high, and go, hey, baby girl.   I'd go to my daughter and I'd say, hey, baby girl, give poppa a kiss goodbye, baby.   And she goes, 'get away from me,' you know.   And let me touch you a little bit, baby, just touch you.   And on the arm – you know, on her arm just touch.   And I'd say, you're soft, baby.   And I'd go do that to [the victim], same thing."

Id.

19

The record shows the jurors knew about the impersonation and the nature of the impersonation from the prosecutor's reading of Petitioner's statement.   In response to further inquiries, Petitioner admitted to doing an impersonation of an old man, hiking his pants up and acting like "an old geezer[.]" Id.   He explained they [Petitioner, his daughter, and the victim] were joking around, cutting up, and laughing and nothing inappropriate occurred.   Id. at 308.

To the extent Petitioner spontaneously opted to impersonate a creepy, dirty old man on the stand, the circuit court, in denying post-conviction relief on the claim of ineffective assistance of counsel, found it would be unreasonable to expect that counsel would foresee "such a terrible impersonation."   Ex. W at 196.   As such, the court concluded that defense counsel did not perform deficiently, and Petitioner did not meet the prejudice prong.   Id. at 197. Applying the Strickland standard of review, the court denied relief and the 5th DCA affirmed.   Ex. CC.

As previously noted, Mr. Monahan testified he did discuss Petitioner's testimony with him.   The circuit court acknowledged this testimony and the fact that defense counsel was concerned about convincing the jury there was a reason for the victim to lie.   Ex. W at 196.   Finally, the court was convinced

that additional preparation would not have helped the defense anticipate or curtail what the court deemed a spontaneous impersonation.   Id. at 196-97.

Petitioner contends counsel failed to adequately prepare him for cross examination by the state.   Petition at 10.   The inquiry is "whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."   Strickland, 466 U.S. 690. However, "hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"   Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).

For this claim, the court credited Mr. Monahan's testimony and concluded his performance was not deficient for failure to expect a spontaneous impersonation from the stand.   In evaluating the performance prong of the Strickland, ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence.   The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.   Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); Hardwick v. Benton, 318 F. App'x 844, 846 n.2 (11th Cir. 2009) (per curiam).

Under these circumstances, the Court finds Petitioner's counsel did not perform deficiently and any alleged deficiency "does not rise to the level of presenting a reasonable probability that the outcome of the Petitioner's trial would have been different."   Fisher v. Sec'y, Fla. Dep't of Corr., No. 8:13-CV-489-T-30TBM, 2013 WL 5739788, at *7 (M.D. Fla. Oct. 22, 2013) (not reported in F.Supp.2d) (finding counsel adequately prepared the defendant for cross examination).   Here, Petitioner has not shown a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided.

Thus, deference should be given to the state court's decision.   The court applied the two-pronged Strickland standard; therefore, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1).   Applying the look-through presumption set forth in Wilson, the Court finds the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.   Indeed, the testimony at the evidentiary hearing supports the state court's factual determinations.   Upon review, the Court concludes there was no unreasonable application of Strickland.   In short, the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.   As such, ground four is due to be denied.

## VII.   GROUND FIVE

Petitioner claims: "Counsel was constitutionally ineffective by failing to elicit existing exculpatory evidence from victim[']s mother."  Petition at 16. Petitioner's supporting facts, although not a model of clarity, are: "where had the victim[']s mother testif[i]ed to the sequence of events that led to her daughter[']s disclosure of her and defendant[']s affair it would have made a strong foundation of believeability [sic] on behalf of defendant where the trial was a credibility contest of defendant and victim."  Id.

The trial record demonstrates Mr. Monahan did call the victim's mother, Victoria Berrera, to testify at trial about the sequence of events that led up to her daughter's disclosure.  Ex. B at 176.  Ms. Berrera provided what would be considered some favorable testimony, such as stating that in the months leading up to the Department of Children and Families (DCF) becoming involved, Ms. Berrera noticed no change in her daughter's behavior.  Id. at 181.  Counsel was able to elicit that mother and daughter discussed sexual activity, and the daughter never indicated she was sexually active.  Id. at 182. Mr. Monahan asked Ms. Berrera if her daughter denied any sexual activity with Petitioner, and Ms. Berrera responded, yes, that was true.  Id.  She also said, on another occasion, her daughter continued to deny the allegations concerning Petitioner.  Id. at 183.

When counsel asked Ms. Berrera if she were concerned about her daughter being sexually active, Ms. Berrera denied that was any concern.   Id. at 184.   Mr. Monahan challenged this testimony by pointing out that in her deposition Ms. Berrera had confirmed that her purpose of going to a doctor was to determine whether her daughter had been sexually active.   Id. at 185. Also of significance, Ms. Berrera attested her daughter never said she was afraid of the Petitioner.   Id. at 187.

As far as the credibility of the victim, Mr. Monahan directly attacked the victim's credibility during closing argument.   Mr. Monahan emphasized the victim's lack of consistency, demonstrated by her denying the allegations on two different occasions, and then changing her story once her mother insisted she go to a doctor, the trigger episode.[9]   Id. at 350-51.   In closing argument, Mr. Monahan argued the change in the victim's story in Dr. Chu's parking lot was due to the fact that the victim feared that a medical examination would show she had been sexually active, something she had previously denied to her mother.   Id. at 354.   Mr. Monahan claimed, "all of a sudden [the victim] became frightened at the prospect of having a physical examination, an examination that could very likely have shown that she had been lying to her

---

[9] Mr. Monahan testified at the evidentiary hearing his recollection was that yes, he needed to have the victim's mother testify about the trigger episode.   Ex. W at 295.

mother about the fact that she had been sexually active and she had to shift things." Id. at 359.

The poignant testimony of Ms. Berrera supported the defense's strategy of showing the dramatic change in the victim's story once she was confronted with her mother's demand that she be examined. The victim had previously denied to her mother that she had been sexually active. The trial record shows the victim spent a considerable amount of time in Petitioner's household, spending more and more time away from her own household. The record also shows, even after the allegations arose and DCF became involved, the victim told her mother she did not want to return home and she wanted to stay in Petitioner's home, testimony highlighted in defense counsel's closing argument. Id. at 355.

Although the sequence of events had been described by the victim, Mr. Monahan wanted to present more through Ms. Barrera's testimony. As noted by Respondents, the defense's strategy was not only to have the victim's mother testify about the trigger episode but also to demonstrate the victim was afraid of her mother.[10] Response at 19. The circuit court, in denying the post-

---

10 In opening statement, Mr. Monahan argued that the victim had other fears: "[s]he was going to be found out that she was sexually – and possibly sexually active . . . she had some problems." Ex. B at 44. In a nutshell, Mr. Monahan used Ms. Barrera's testimony as it "fit into their strategy to be able to show why [the victim] made the allegations against Petitioner – because she didn't want her mother finding out she had been sexually active with others."

conviction motion, said counsel's strategy "appears to be reasonable."   Ex. W at 197.   Of import, counsel had discussed this strategy with Petitioner and this strategy was adopted and used throughout trial.   Id.   The circuit court, noting the reasonableness of the strategy, found neither prong of Strickland had been met.   Id.

Although not set forth in the underlying supporting facts of the Petition, Petitioner, in his Reply, contends counsel failed to elicit critical testimony from Ms. Barrera's deposition that Petitioner did not have authority over the victim. Reply at 9.   Petitioner asserts that this deposition testimony should have been used to challenge the element of familial or custodial relationship and to impeach the victim's testimony that Petitioner was an authority figure.   Id. Petitioner contends Mr. Monahan missed the opportunity to attack the victim's credibility.   Id. at 10.

In order to attack the victim's credibility in this regard, counsel risked damaging Petitioner's credibility because his statement to the investigator supported the finding of a familial or custodial relationship.   Petitioner referred to the victim as being like a stepdaughter or foster daughter and his role being like a foster father, stepfather, or uncle.   Petitioner readily

---

Response at 20.

admitted he provided the victim with food, clothing, shelter, and love, expressing a "parent kind of thing." Petitioner said the victim expected a father figure and in response, he took care of her and admonished the victim for certain actions or comments.

Defense counsel said he talked in depth with Petitioner about his relationship with the victim and concluded the victim was considered almost a family member, sleeping over, having clothes stored at Petitioner's house, accompanying the family on activities, shopping with the family, and using the family's computers and Petitioner's cellular telephone. The victim told the CPT she spent up to three weeks at a time at Petitioner's house. A renter, Peter Kinosis, confirmed the victim's account. Petitioner readily admitted that the victim often stayed at his house and he or his wife would take the victim to school and provide her with a shelter and provisions.[11]

At trial, Petitioner described himself as "[a] father figure and friend" and told the jury he treated the victim like family, not favoring his daughter over the victim. Ex. B at 285, 296. His own statement to the authorities belied any contention that he was not a father/authority figure to the victim. To

---

[11] Essentially agreeing with Petitioner's account, the victim testified that she would stay at Petitioner's house on school nights, and he would wake her, feed her, drive her to school, and discipline her. Ex. B at 52. The victim described Petitioner as an authority figure. Id. at 52-53.

claim otherwise at trial would likely have been disastrous, damaging Petitioner's credibility.   Therefore, it was reasonable for counsel not to contest the element of custodial authority.

Applying the Strickland standard and finding counsel's strategy reasonable, the circuit court denied relief, finding neither prong of Strickland had been met.   Ex. W at 197.   The 5th DCA affirmed.   Ex. CC.

The 5th DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption set forth in Wilson, the state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

In conclusion, the record shows the state court applied the two-pronged Strickland standard, finding neither deficient performance nor prejudice.   As such, Petitioner cannot satisfy the "contrary to" test nor has he shown the state court unreasonably applied Strickland or unreasonably determined the facts. The 5th DCA's decision affirming the circuit court is entitled to AEDPA deference.   It's adjudication of this claim is neither contrary to nor an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground five.

## VIII.   GROUND SIX

In his sixth and final ground, Petitioner raises a claim of ineffective assistance of counsel for failure to object to comments made by the prosecutor. Petition at 17.   Petitioner raised a comparable claim in ground nine of his Rule 3.850 motion.   Ex. V at 20-23.   The court summarily denied this ground, explaining:

> Here the Court agrees that all comments in closing by the prosecution were references that were brought out as evidence during the trial (see **Appendix C**, Trial Transcript, Pages 346-350) and were fair comment.   The Court instructed the jury that the closing was only argument.   The State appears only to have argued the evidence that came out in the day long trial.   An objection by Trial Counsel would have no lawful ground.   Neither prong of Strickland has been met here.

Ex. W at 70.

In his Reply at 12, Petitioner complains the prosecutor was vouching for the victim's credibility when, during closing argument, the prosecutor argued:

> So the only thing you have to worry about is did this happen.   Did it happen and how do we know C. is telling the truth.
>
> A fourteen-year-old girl does not come in here in front of a bunch of strangers, after being through interview after interview in deposition, and come into court and tell you about these intimate details that have happened to her that have traumatized her, her family, and the family she lost.

29

> She doesn't have her cousin.   She doesn't have her aunt anymore.   She never wanted her story to be told, and she never wanted this to come out.   She never wanted Clayton Tucker's wife to know that he had had sex with her.   She never wanted M., her best friend, to know that her dad had had sex with her.

Ex. B at 346-47.

Petitioner asserts that his due process rights were violated by these improper remarks which prejudiced his defense.   Reply at 13.   He contends the state's court's decision denying this claim was unreasonable.   Id.

The record demonstrates the following.   The court instructed the jury: "The attorneys will now present their final arguments.   Please remember that what the attorneys say is not evidence or your instruction on the law. . . . They are intended to aid you in understanding the case."   Ex. B at 341.   Thus, the jury had been properly instructed that the attorneys, during closing arguments, were not presenting evidence, they were simply making argument.

In reviewing Petitioner's claim, this Court recognizes the legal maxim that attorneys are permitted wide latitude during closing argument. Hammond v. Hall, 586 F.3d 1289, 1335 (11th Cir. 2009), cert. denied, 562 U.S. 1145 (2011).   The question arises as to whether the prosecutor was improperly vouching for the victim's credibility, that is, did the prosecutor place the prestige of the government behind the witness or was the prosecutor

improperly suggesting that information not presented to the jury supports the victim's testimony.

The record shows the victim feared getting into trouble for letting Petitioner take advantage of her.   Ex. B at 64, 83.   The victim testified she did not come forward because she was scared.   Id. at 74.   She thought Ann, her aunt and Petitioner's wife, would be mad at her.   Id. at 74.   The victim believed she would get into trouble.   Id.   She did not want anyone to think there was something wrong.   Id. at 78.   Consequently, she did not reveal the details of the offenses to Ann or to her cousin.   Id. at 85.   The victim also withheld the information from her mother until "it would come out when they physically examined me."   Id. at 84.   The victim said she did not provide her mother with details as she was upset and crying, but she did tell her mother Petitioner touched her everywhere.   Id. at 83-84.   Although she revealed details at the Child Advocacy Center, she did not provide her parents with the details of the offenses.   Id. at 84-85.

In Muhammad v. McNeil, 352 F. App'x 371, 376 (11th Cir. 2009) (per curiam), cert. denied, 559 U.S. 1052 (2010), the Eleventh Circuit explained:

> A prosecutor's comments constitute improper "vouching" if they are "based on the government's reputation or allude to evidence not formally before

the jury." <u>Eyster</u>,[12] 948 F.2d at 1206 (citing <u>United States v. Hernandez</u>, 921 F.2d 1569, 1573 (11th Cir.1991)). "The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case...." <u>Hernandez</u>, 921 F.2d at 1573. Although improper vouching can be grounds for reversal, it may be cured if the remarks are not "substantially prejudicial" and any lingering prejudice is remedied by a careful cautionary instruction. <u>See United States v. Sarmiento</u>, 744 F.2d 755, 762–65 (11th Cir.1984).

In this instance, the prosecutor certainly did not place the prestige of the government behind the witness nor did the prosecutor improperly suggest that information not presented to the jury supports the victim's testimony. Instead, the prosecutor argued the victim had been traumatized by the investigation and the loss of her close relationship with her cousin and aunt, evidentiary matters presented at trial.

To the extent the prosecutor's closing argument suggested that the victim was more candid and forthright due to her grim circumstances, the Court finds this did not render the trial fundamentally unfair.  It was an isolated comment, and the prosecutor did not express a personal belief in the witness' credibility.  <u>Eyster</u>, 948 F.2d at 1206.  Indeed, the prosecutor did not make "explicit personal assurances of the witness' veracity."  <u>Id</u>.  Finally, the

---

12  <u>United States v. Eyster</u>, 948 F.2d 1196 (1991).

prosecutor's argument was not "based on the government's reputation or allude to evidence not formally before the jury.   Id. (citing United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir.), cert. denied, 500 U.S. 958 (1991)).

Based on the above, counsel did not perform deficiently for failure to object to the closing argument.   There was no lawful ground for an objection as the state was arguing the evidence.   The circuit court found the state's comments in closing argument "fair comment."   Ex. W at 70.   The circuit court noted the trial court's instruction to the the jury that closing argument is only argument.   Id.   As such, the circuit court held there was no lawful ground for Mr. Monahan to object.   Id.   Finding neither of the prongs of Strickland met, the circuit court denied post-conviction relief.   Id.   The 5th DCA affirmed.   Ex. CC.

In denying post-conviction relief, the circuit court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland.   Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry.   Furthermore, the 5th DCA affirmed.

The 5th DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in <u>Wilson</u>, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective.   Thus, Petitioner has failed to demonstrate a Sixth Amendment or Fourteenth Amendment violation under the United States Constitution.   In sum, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground six.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.    This action is **DISMISSED WITH PREJUDICE**.

3.    The **Clerk** shall enter judgment accordingly and close this case.

4.      If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**. [13]     Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of February, 2022.

_____
BRIAN J. DAVIS
United States District Judge

sa 2/9
c:
Clayton Foster Tucker
Counsel of Record

---

[13] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.